**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **FRANCISCO GARCIA,** | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:11-cv-144 |
| | § | |
| **CITY OF SHERMAN, TEXAS,** | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Francisco Garcia, Plaintiff, and files this original complaint against the City of Sherman, Texas, Defendant, and would respectfully show the Court as follows:

**I. PARTIES**

1. Plaintiff is an individual residing in Grayson County, Texas.

2. Defendant City of Sherman, Texas is a municipality of the State of Texas and may be served by serving William Magers, Mayor, 220 W. Mulberry Street, P.O. Box 1106, Sherman, Texas 75091-1106.

**II. JURISDICTION**

3. Jurisdiction is founded on federal question, specifically Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C.A. 2000e, *et seq*. (Unlawful Employment Practices), as amended.

4. All prerequisites to filing suit have been met.

**III. FACTS**

5. Plaintiff was employed by the City of Sherman, Texas for approximately twenty-four (24) years. Plaintiff began working there in March 1986. During his years with the City of Sherman, he

worked in the parks department, in code enforcement, and in the water department. At the time of his discharge he was employed in the parks department.

6. On or about March 26, 2010, at approximately 11:45 a.m., Plaintiff's supervisor, Chris Garner, approached him and told him he needed to translate from English to Spanish for a contract job. Apparently the contractor could not speak English.

7. Plaintiff asked Mr. Garner about the translating and what exactly he was to translate. Mr. Garner would only say Plaintiff needed to be at the job site at 3:00 p.m. to translate. Plaintiff told him he was not comfortable enough in his Spanish to translate for a contract job. Mr. Garner asked him if he was refusing to translate and Plaintiff replied he was. Mr. Garner walked away and Plaintiff left for lunch.

8. At around 3:00 p.m., Mr. Garner called Plaintiff on the truck radio and told him to go back to the office. When Plaintiff arrived in the office, his crew leader, Steve Pines, was in the office being written up for allowing Plaintiff to ride in the back of a trailer. Mr. Pines told Mr. Garner that he had never heard of this rule.

9. Mr. Garner then gave Plaintiff a paper stating Plaintiff was being written up for riding in the back of the trailer. Plaintiff signed it.

10. Mr. Garner then asked Mr. Pines to leave. He then handed Plaintiff another write up and said Plaintiff was being written up for refusing to translate for the contract job. Plaintiff did not have his glasses and could not read the paper. Mr. Garner sent Plaintiff out of the office and got on the telephone.

11. Jeff McKinney, a crew leader, walked into Mr. Garner's office and Plaintiff was asked to return. Mr. Garner asked Plaintiff if he was refusing to sign the write up. Plaintiff replied again that

he did not have his reading glasses and could not read it for himself. Plaintiff requested a copy to take home to review.

12. Mr. Garner refused to give him a copy of the write up because he had not signed it.

13. Mr. Garner made another phone call and then told Plaintiff that if he did not sign the write up then he would have to leave the premises. Mr. Garner told him to get his stuff and leave the premises. He said that if Plaintiff had any more questions he should go to Human Resources.

14. I immediately went to the HR department and asked to speak to Wayne Blackwell, the HR director.

15. When Mr. Blackwell arrived in the office, he called Plaintiff into his office and asked what was going on.

16. Plaintiff explained that he was not qualified or certified to translate Spanish for a contract job and was not comfortable doing so. Plaintiff also reminded Mr. Blackwell that translating was not part of his job duties. While he did not mind translating a bit for citizens when he was working in the parks, he simply was not qualified to translate for a contract job.

17. Mr. Blackwell told Plaintiff that there was no difference between translating for someone who came in off the street looking for a grave at the cemetery and translating for a contractor. He told Plaintiff he was dismissing himself because he refused to sign the write up.

18. Plaintiff once again asked what the write up was for since he did not have his reading glasses. Mr. Blackwell refused to explain the reason for the write up.

19. Plaintiff told Mr. Blackwell that Mr. Garner had said he was being written up for refusing to follow orders. Plaintiff said he was not refusing an order to do the work of a laborer, his job position. He was declining to use his Spanish language skills to translate for a contractor.

20.     Plaintiff further inquired why the City did not have someone qualified to translate for the contractor.  Mr. Blackwell said that was why they had Plaintiff.

21.     Plaintiff again asked if he was being fired.  Mr. Blackwell would not confirm this.  He told Plaintiff not to return to his job site and that if he did it would be considered criminal trespass.

22.     Mr. Blackwell further told Plaintiff that he had been taken off the clock at 1:00 p.m. that day.  This was approximately two hours **before** Mr. Garner called him to the office and presented him with the write up.

23.     At approximately 4:15 p.m., Plaintiff inquired of the city manager, George Olson, why he was being dismissed.  Mr. Olson claimed he would find out more about it.

24.     On March 29, 2010 at approximately 8:00 a.m., Plaintiff went to see Mr. Olson again.  He asked if he had been fired on Friday and he said yes.  Plaintiff requested something in writing to that effect which included the reason.  Mr. Olson became hostile and asked why Plaintiff was bringing the problem to him.  He advised Plaintiff to read the policy on the appeal procedure and file one.  Then they would have a meeting with Plaintiff.

25.     On March 30, 2010, Plaintiff received a letter dated March 25, 2010 from Mr. Blackwell, confirming his "separation from employment" effective March 26, 2010.  Mr. Blackwell states the "action is based on your continued refusal to obey the lawful orders/directives given to you by your immediate supervisor."

26.     Plaintiff delivered his request for an appeal of the termination and request for a hearing on March 31, 2010.  The appeal hearing was held on April 6, 2010.  In correspondence dated April 9, 2010, Mr. Olson upheld and sustained Plaintiff's separation from employment.

27. At the time of Plaintiff's discharge, he was earning approximately $13.648 per hour plus benefits for 40 hour workweek.

## IV. FEDERAL CLAIMS FOR RELIEF AND DAMAGES

### COUNT I

28. **Violations of 42 U.S.C.A. 2000e, *et seq*. (Unlawful Employment Practices), as amended**

29. A. Plaintiff is alleging that he was discharged in violation of 42 U.S.C.A. 2000e, *et seq*. (Unlawful Employment Practices), as amended, protecting Plaintiff from discrimination in the workplace on the basis of race.

30. B. Plaintiff claims all relief, legal and equitable that effectuate his rights 42 U.S.C.A. 2000e, *et seq*. (Unlawful Employment Practices), as amended.

31. C. Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A. 2000e, *et seq*. (Unlawful Employment Practices), as amended.

32. D. On or about July 13, 2010, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On February 15, 2011, he received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated February 15, 2011.

### COUNT II

33. **Violations of Title VII of the Civil Rights Act of 1964, as amended**

34. A. Plaintiff is alleging that he was discharged in violation of Title VII of the Civil Rights Act of 1964, as amended, protecting Plaintiff from discrimination on the basis of race.

35. B. Plaintiff claims all relief, legal and equitable, that effectuate his rights under Title VII of the Civil Rights Act of 1964, as amended.


36. C. Plaintiff requests reasonable attorney's fees as permitted under Title VII of the Civil Rights Act of 1964, as amended.

37. D. On or about July 13, 2010, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On February 15, 2011, he received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated February 15, 2011.

## V. DAMAGES

38. Plaintiff would show that he has sustained damages within the jurisdictional limits of the Court as a proximate cause of Defendant's wrongful conduct. Plaintiff claims all relief at law and in equity pursuant to Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C.A. 2000e, *et seq*. (Unlawful Employment Practices), as amended.

## VI. ATTORNEY'S FEES

39. Plaintiff would show that, as a result of Defendant's wrongful conduct as set forth herein, he is entitled to reasonable and necessary attorney's fees.

## VII. JURY DEMAND

40. Plaintiff requests that this matter be tried before a jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that upon final hearing hereof, Plaintiff have judgment against Defendant for actual damages in an amount within the jurisdictional limits of the Court together with interest on said amount at the highest rate allowed by law; mental anguish; punitive damages; reasonable attorney's fees; costs of court; prejudgment and postjudgment interest; and any and all further relief, at law or in equity, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**RONALD R. HUFF**
Attorney and Counselor at Law
112 South Crockett Street
Sherman, Texas 75090
(903) 893-1616 (telephone)
(903) 813-3265 (facsimile)


 /s/ Ronald R. Huff
Ronald R. Huff (SBN 10185050)
**ATTORNEY FOR PLAINTIFF**